IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Criminal Action No. |
| v. ) | 05-00344-01-CR-W-ODS |
| ) | |
| GARY EYE, ) | |
| ) | |
| Defendant. ) | |

**O R D E R**

Before the court is defendant's motion for severance of defendants on the grounds that (1) antagonistic defenses among the defendants are inevitable, (2) he will not be able to call co-defendant Sandstrom as a witness, and (3) there is a possible Bruton issue. Because I find that defendant is properly joined, and he has raised no issues mandating severance, his motion for severance will be denied.

*I. BACKGROUND*

On September 29, 2005, an indictment was returned charging defendant with two counts of interference with federally protected activities, in violation of 18 U.S.C. § 245(b)(2)(B); one count of using or discharging a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii); two counts of using or discharging a firearm during a crime of violence causing murder, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and (j)(1); one

count of tampering with a witness, in violation of 18 U.S.C. §§ 1512(a)(1)(C) and (a)(3)(A); one count of obstruction of justice, in violation of 18 U.S.C. § 1519; and one count of using fire to commit a felony, in violation of 18 U.S.C. § 844(h)(1). The indictment charges co-defendant Steven Sandstrom with all of these counts as well, and additionally charges Sandstrom with one count of threatening to retaliate against a federal witness, in violation of 18 U.S.C. § 1513(b)(2).

On March 16, 2006, defendant filed a motion to sever his trial from the trial of co-defendant Sandstrom (document number 80) on the grounds that (1) antagonistic defenses among the defendants are inevitable, (2) he will not be able to call co-defendant Sandstrom as a witness, and (3) there is a possible <u>Bruton</u> issue. On April 14, 2006, the government filed a response in opposition to defendant's motion for severance, and attached proposed redacted statements (document number 103).

## *II. MOTION FOR SEVERANCE*

The issues of joinder and severance are governed by Rules 8 and 14, Federal Rules of Criminal Procedure. Rule 8 establishes the requirements for joinder of offenses or defendants in the same indictment. Rule 14 allows the trial

2

court to order severance, even though joinder of offenses or defendants is proper under Rule 8, if it appears that the defendant or government is prejudiced by the joinder.  The objective of both rules is to balance the prejudice inherent in joint trials against the interests in judicial economy.

### *A.   JOINDER*

Joint trials play a vital role in the criminal justice system.  Richardson v. Marsh, 481 U.S. 200, 209 (1987).  They promote efficiency and "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts."  Id., at 210.

Whether joinder of defendants is proper is a question of law which is reviewed de novo.  United States v. Robaina, 39 F.3d 858, 861 (8th Cir. 1994).  The specific joinder standards of Rule 8 are not themselves of Constitutional magnitude.  United States v. Lane, 474 U.S. 438, 446 (1986).  Improper joinder does not, in itself, violate the Constitution; rather, misjoinder would rise to the level of a Constitutional violation only if it results in prejudice so great as to deny a defendant his or her Fifth Amendment right to a fair trial.  Id. at 446 n. 8.

Whether joinder is proper is generally to be determined from the face of the indictment.  United States v. Willis,

3

940 F.3d 1136, 1138 (8th Cir. 1991), cert. denied, 507 U.S. 971 (1993); United States v. Andrade, 788 F.2d 521, 529 (8th Cir.), cert. denied, 479 U.S. 963 (1986). Joinder of two or more defendants in a single indictment is proper under Rule 8(b) if the defendants are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. United States v. Gravatt, 280 F.3d 1189, 1191 (8th Cir. 2002); United States v. Akers, 987 F.2d 507, 512 (8th Cir. 1993). Rule 8(b) requires that there be some common activity involving all of the defendants which embraces all the charged offenses, but it is not necessary that each defendant have participated in each act or transaction of the series. United States v. O'Connell, 841 F.2d 1408, 1431 (8th Cir. 1987).

In this case, defendant does not argue in his motion that the joinder of him and Sandstrom[1] is improper, he only argues that the joinder is prejudicial and he should therefore be severed. Because defendants are both charged with all counts except one and these counts are all part of

---

[1]In his motion, defendant repeatedly refers to "Sanderson"; however, I assume he meant co-defendant Sandstrom.

4

the same series of acts or transactions, I find that defendant and co-defendant Sandstrom are properly joined.

## B.   *SEVERANCE*

Once the Rule 8 requirements are met by the allegations in the indictment, severance thereafter is controlled entirely by Federal Rule of Criminal Procedure 14.  <u>United States v. Lane</u>, 474 U.S. at 447.  Rule 14 allows severance where joinder will result in unfair prejudice to a defendant.

The general rule is that persons charged in the same indictment should be tried together.  <u>Zafiro v. United States</u>, 506 U.S. 534 (1993).  Courts have long recognized that joint trials conserve government funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial.  <u>United States v. Lane</u>, 474 U.S. at 449; <u>Bruton v. United States</u>, 391 U.S. 123, 134 (1968).

Severance under Rule 14 will not be granted absent a showing of unfair prejudice.  <u>United States v. Lane</u>, 474 U.S. at 447.  Severance is not required simply because a defendant might have a better chance of acquittal in a severed proceeding.  <u>United States v.Blaylock</u>, 421 F.3d 758, 766 (8th Cir. 2005), <u>cert</u>. <u>denied</u>, 126 S. Ct. 1108 (2006).

5

Furthermore, Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion. Zafiro v. United States, 506 U.S. at 539. Where defendants are properly joined under Rule 8(b), severance should be granted only if there is a "serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Id. Accord United States v.Joiner, 418 F.3d 863, 868 (8th Cir. 2005). Even when the risk of prejudice is high, limiting instructions often will suffice to cure any risk of prejudice. Zafiro v. United States, 506 U.S. at 539; Richardson v. Marsh, 481 U.S. at 211.

1. *ANTAGONISTIC DEFENSES*

Defendant claims that he is entitled to a severance because the presentation of contradictory defenses is likely.

Mutually antagonistic defenses are not prejudicial per se. Zafiro v. United States, 506 U.S. 534, 538-39 (1993). Where a defendant asserts that his defense would conflict with a co-defendant's defense, the defendant must show more than that his strategy was generally antagonistic to that of

6

the other co-defendant.  United States v. Oakie, 12 F.3d 1436, 1441 (8th Cir. 1993).  The fact that there is hostility among the defendants is not sufficient to require separate trials.  United States v. Searing, 984 F.2d 960, 965 (8th Cir. 1993); United States v. Swinney, 970 F.2d 494, 500 (8th Cir.), cert. denied, 506 U.S. 1011 (1992). Defendant is required to make a showing that the conflict between the defenses is so prejudicial that the differences are irreconcilable.  United States v. Abfalter, 340 F.3d 646, 651 (8th Cir. 2003), cert. denied, 540 U.S. 1134 (2004) . To determine whether defenses are irreconcilable, the test is "whether the defenses so conflict that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other."  United States v. Flores, 362 F.3d 1030, 1040 (8th Cir. 2004); United States v. Abfalter, 340 F.3d at 651.  A defendant is not entitled to severance unless he can show a "serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocense."  United States v. Flores, 362 F.3d at 1040.  Hostility and fingerpointing during the trial alone are not sufficient to justify granting a severance.  United States v. Searing, 984 F.2d 960, 965 (8th

7

Cir. 1993).

While mutually antagonistic defenses have been much discussed in theory, only rarely have courts found that they exist in practice. Zafiro v. United States, 506 U.S. at 538; United States v. Voigt, 89 F.3d 1050, 1094-1095 (3rd Cir. 1996). The only example I have been able to find appears in DeLuna v. United States, 308 F.2d 140 (5th Cir. 1962). In that case, two men were arrested for possessing a package of drugs. One defendant claimed that he was merely riding in the car and when police approached, the other defendant threw a package to him and told him to throw it out the window, which he did. The other defendant claimed that he never had possession of the package or knowledge that it was present.

The defense theories in DeLuna were not what caused the court to find that the defenses were unconstitutionally antagonistic. In that case, one defendant testified and the other did not. The attorney for the defendant who testified stated many times during closing arguments that his client had nothing to hide, and that if the co-defendant were an honest man, he would have testified. The court held that the defenses, as presented, violated the co-defendant's Constitutional right to remain silent.

8

It is well settled that attempting to place blame on the co-defendant does not justify a severance. <u>United States v. Williams</u>, 429 F.3d 767, 775 (8th Cir. 2005); <u>United States v. Flores</u>, 362 F.3d 1030, 1039-1040 (8th Cir. 2004). It is common for co-defendants to attempt to save their own skin by diverting the jury's attention to the other defendant. <u>United States v. Basile</u>, 109 F.3d 1304, 1310 (8th Cir. 1997).

In <u>United States v. Basile</u>, 109 F.3d 1304 (8th Cir. 1997), Daniel Basile and Richard DeCaro were charged with a murder-for-hire scheme. The government's theory was that DeCaro hired Basile to steal DeCaro's van for insurance purposes, and then later hired him to kill DeCaro's wife and steal their Blazer, making the killing look like part of a robbery. At trial, DeCaro presented evidence that Basile and an individual related to Basile and who had access to the keys to the stolen vehicles conspired to commit the crimes. Basile's defense was that DeCaro hired him to steal the vehicles, but he did not kill DeCaro's wife. Basile argued that someone else killed DeCaro's wife and that he was the fall guy. The court of appeals held that these defenses were not sufficiently antagonistic to require a severance, even though Basile admitted, through his

9

attorney, that he stole the DeCaro vehicles at the request of co-defendant Richard DeCaro (who was also charged with insurance fraud and arson stemming from the theft and burning of the van).

In this case, defendant states that his own defense will be that he was in the car with Sandstrom; they pulled over and defendant got out of the car to urinate; he got into a physical confrontation with the victim, Mr. McCay, over his public urination; and while he was fighting with McCay, Sandstrom got out of the car and shot McCay. Defendant speculates that Sandstrom will not take the stand at trial and will rely on defense of general denial. I find that these defenses (assuming defendant is correct about Sandstrom's expected defense) are not antagonistic. Presented with these two defenses, the jury could believe that while defendant was fighting with McCay, someone other than Sandstrom walked up and shot McCay. Therefore, it is clear that the jury is able to believe both defenses, and that the requirement has not been met that "in order to believe the core of one defense the jury must disbelieve the core of the other."

Because the anticipated defenses are not antagonistic, defendant's motion to sever on this basis will be denied.

10

## *2. ABILITY TO CROSS EXAMINE SANDSTROM*

Defendant argues that "It is essential to Mr. Eye's case that he is afforded the opportunity to cross-examine Mr. Sanderson [sic]" because he wrote letters and made statements incriminating himself and exculpating defendant Eye.

Before a claim of needing the testimony of a co-defendant will mandate severance, it must first be shown that the co-defendant in question is actually willing to testify at a severed trial, and that the co-defendant's testimony will actually be substantially exculpatory. United States v. Vue, 13 F.3d 1206, 1210 (8th Cir. 1994). The Eighth Circuit has traditionally required a detailed showing of the particulars of the proffered testimony before requiring severance. United States v. Jackson, 549 F.2d 517, 524-25 (8th Cir.), cert. denied, 430 U.S. 985 (1977).

Defendant states in his motion that "it would appear that Mr. Sanderson's [sic] only tenable approach is to rely on general denial and not take the stand and try to suggest though [sic] cross-examination that Mr. Eye is the guilty party." It is clear from defendant's motion that the first requirement has not been met -- that the co-defendant is actually willing to testify. Without Sandstrom's willing

11

testimony, defendant cannot force Sandstrom to testify in a severed trial. Sandstrom would be free to invoke his Fifth Amendment rights. Therefore, granting defendant's motion for severance would not result in his being able to cross-examine co-defendant Sandstrom.

### 3. *BRUTON*

Defendant argues that severance should be granted because there are letters, statements, and tape recordings of co-defendant Sandstrom which mention defendant Eye.

In <u>Bruton v. United States</u>, 391 U.S. 123 (1968), the Supreme Court held that the admission in a joint trial of a nontestifying co-defendant's confession expressly implicating the defendant violated the defendant's right under the Sixth Amendment to confront the witnesses against him, even if the trial court instructed the jury to consider the confession only against the co-defendant who had made the statement. In a more recent case, however, the Court held that the Confrontation Clause is not violated by the admission of a nontestifying co-defendant's confession with a proper limiting instruction when the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence. <u>Richardson v. Marsh</u>, 481 U.S. 200, 211 (1987).

12

The Eighth Circuit has held that the Confrontation Clause is not violated where a defendant's name is replaced by a neutral pronoun and the redacted confession implicates the defendant only when connected with other evidence in the case, as long as the redacted confession along with other evidence does not lead the jury straight to the conclusion that the neutral pronoun refers to the defendant. United States v. Miller, 995 F.2d 865, 867 (8th Cir.), cert. denied, 510 U.S. 1018 (1993). For example, where testimony that the co-defendant gave agents the proper names of his accomplices is combined with substituting the defendant's name with the word "blank" in the statement, the jury is invited to fill in the blank. United States v. Alvarado, 882 F.2d 645, 651-53 (2d Cir. 1989), cert. denied, 493 U.S. 1071 (1990); United States v. Danzey, 594 F.2d 905 (2d Cir.), cert. denied, 441 U.S. 951 (1979).

In this case, the government attached to its response redacted versions of the Interview dated March 22, 2005; Interview dated April 13, 2005; and letter from co-defendant Sandstrom to "Carolyn". The redacted versions delete references to defendant Eye and addresses, and substitute "a house" and "they" or "the other person" for any references to defendant and others or their residences. For example,

13

the following specific changes have been made:

  BEFORE:  Sandstrom finally stated that he had been at Christina (Vince's cousin) house the morning of the homicide.  He stated that the phone rang and Christina answered the phone.  He stated Christina told him to go meet Gary at his (Sandstrom's parents), 12th and Ewing.  He stated that he went over there and met Gary.  He stated that Gary was driving a red Dodge Intrepid.  He stated that Gary asked him to follow him because he had to get rid of the car because it was hot.  He stated he followed Gary down to the area of 23rd and Manchester where Gary tried setting the car on fire.  He stated that when Gary got out of the Intrepid he observed Gary holding a dark colored handgun.  He stated that Gary tried several times to light the car on fire.  He stated that he (Sandstrom) eventually went over to the car and with a torch-like lighter set the seats of the Intrepid on fire.  He stated they got back in his vehicle and left.  He stated while in the Jeep, Gary placed the dark colored gun next to the passenger seat.  He stated that he got mad at Gary for not telling him that he had the pistol.  He stated that he and Gary then went over to Vince's girlfriend's house, Christina Stanley, over off of 16th Terrace.  He stated as him and Gary pulled up that Vince was pulling up behind them in a truck.

  AFTER:  Sandstrom finally stated that he had been at someone's house the morning of the homicide.  He stated that the phone rang and a girl answered the phone.  He stated the girl told him to go meet somebody at his (Sandstrom's) parents, 12th and Ewing.  He stated that he went over there and met them.  He stated that the person he met was driving a red Dodge Intrepid.  He stated that they asked him to follow him because they had to get rid of the car because it was hot.  He stated he followed them down to the area of 23rd and

14

>            Manchester where the other person tried
>            setting the car on fire. He stated that when
>            the other person got out of the Intrepid he
>            observed that they were holding a dark
>            colored handgun. He stated that the other
>            person tried several times to light the car
>            on fire. He stated that he (Sandstrom)
>            eventually went over to the car and with a
>            torch-like lighter set the seats of the
>            Intrepid on fire. He stated they got back in
>            his vehicle and left. He stated while in the
>            Jeep, the other person placed the dark
>            colored gun next to the passenger seat. He
>            stated that he got mad at that person for not
>            telling him that he had the pistol. He
>            stated that they then went over to a house
>            over off of 16th Terrace. He stated as they
>            pulled up that someone else was pulling up
>            behind them in a truck.

Where a confession is redacted to refer to generic "persons" so as not to expressly implicate a defendant, the Confrontation Clause has not been violated. <u>United States v. Miller</u>, 995 F.2d at 867 (redacted to refer to generic "persons in Minnesota"). I find that the Interviews and the letter have been redacted to the point that linkage is necessary before any incriminating inference can be drawn.[2]

---

[2] Additional redactions need to be made in order to keep the references neutral. The interview dated March 22, 2005, page 2, line 8 of the third paragraph, reads, "that they asked him to follow **him** because they had to get rid of the car because it was". The word "him" needs to be changed to "them". On the same page, line 16 reads, "He stated that he got mad at that person for not telling him that **he** had the pistol. He". The word "he" needs to be changed to "they". On page 3 of that same document, the words "he", "his", and "him" need to be changed to the neutral "they", "their", and

Case 4:05-cr-00344-ODS   Document 104   Filed 04/21/06   Page 15 of 16

Therefore, defendant's motion to sever on this basis will be denied.

### III. CONCLUSION

Defendant requested an evidentiary hearing on the issue of severance; however, I find that the issues presented are questions of law and a hearing is not necessary. Therefore, defendant's request for a hearing is denied.

Because defendant is properly joined with co-defendant Sandstrom, and because he has raised no issues which require a severance, it is

ORDERED that defendant's motion for severance of defendants is denied.

Counsel are reminded that objections to this order on the ground that it is clearly erroneous or contrary to law must be filed and served within ten days.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
April 21, 2006

---

"them" in lines 7, 8, 21, 22, 24, 25, 26, 27, 29, and 30 (11 instances). In the Interview dated April 13, 2005, the same changes need to be made on page 1, lines 20, 21, and 39 (4 instances). Once those changes have been made, all references to defendant Eye will be neutral and will not obviously directly refer to defendant Eye.

16